| IN THE UNITED STATES DISTRICT COURT<br>DISTRICT OF UTAH, CENTRAL DIVISION | |
|---|---|
| FREDERICK MUNSON,<br><br>     Plaintiff,<br><br>v.<br><br>SHRINERS HOSPITAL FOR CHILDREN,<br><br>     Defendant. | **REPORT AND RECOMMENDATION**<br><br>Case No.  2:12-cv-698-CW-EJF<br><br>District Judge Clark Waddoups<br><br>Magistrate Judge Evelyn J. Furse |

On April 18, 2013, Frederick Munson filed his Amended Complaint against Shriners Hospital for Children ("Shriners") chiefly alleging claims under the Vocational Rehabilitiation Act of 1973, 29 U.S.C. §§ 701–796l and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213.  (*See* ECF No. 19.)  Shriners moves this Court under Federal Rule of Civil Procedure 56 for summary judgment on all of Mr. Munson's claims.[1]  The undersigned Magistrate Judge has carefully read the Motion and Memoranda submitted for and against Shriners' Motion for Summary Judgment.  Because Mr. Munson does not meet the requirements of a qualified individual with a disability under the ADA, and because he otherwise fails to establish a prima facie case for his claims, the undersigned Magistrate Judge recommends[2] the Court grant Shriners' Motion.

---

[1] In his Opposition Memorandum Mr. Munson concedes his claim for breach of contract lacks a legal basis and stipulates to dismissal of the claim.  (Opp'n Mem. 16, ECF No. 25.)  The undersigned Magistrate Judge therefore recommends the Court dismiss Mr. Munson's first cause of action for breach of contract.

[2] On July 26, 2012, Judge Clark Waddoups referred this case to the undersigned Magistrate Judge under 28 U.S.C. § 636(b)(1)(B).  (ECF No. 4.)

## LEGAL STANDARD

Courts may grant summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, a court must "view the evidence and make all reasonable inferences in the light most favorable to the nonmoving party." *N. Natural Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008) (citation omitted).

## FACTUAL BACKGROUND[3]

Shriners hired Mr. Munson as a janitor in June 2008. (Fact 2.) This job required him to clean carpets, use industrial vacuums, empty garbage bins, sweep and mop floors, and remove dust from ceilings, wall vents, and machines, among other duties. (Fact 11.) The description of Mr. Munson's job states: "Extended periods (up to 7.5 hours per shift) of standing/walking, unassisted moving/lifting objects up to 50 pounds, routine bending, stooping and reaching." (Fact 12.) Mr. Munson would generally stand or walk for the duration of each shift. (Fact 13.)

On March 7, 2011, Mr. Munson fell on the steps outside Shriners while leaving work. (Fact 4.) The fall caused injuries to Mr. Munson's leg, ankle, and shoulder. (Fact 4.) Mr. Munson used a week of vacation time right after his injury. (Fact 71.) From mid-March to early June 2011 Mr. Munson took eighteen paid-time-off days. (*Id.*) Shriners' policy prohibits employees from using sick time to cover work missed because of workplace injury, thus Shriners did not permit Mr. Munson to use sick time to recover from this injury. (*See* Fact 72.)

---

[3] The Court recites the below facts from the parties' briefs, considering the evidence and making all reasonable inferences in the light most favorable to Mr. Munson. The Court notes that the parties agreed on most of the facts.

In March 2011, Judy Carlson and Vernon Spears—Mr. Munson's supervisors—threatened on multiple occasions to terminate his employment if he did not come to work. (Munson Dep. 144:18–146:19.) Mr. Munson wanted to take leave from work during March, April, and May 2011, to allow his injury to heal, but his doctor's notes permitted him to work with a protective boot or splint on his foot, and Shriners required him to work. (Facts 53, 56.) During these three months Vernon Spears gave Mr. Munson rides to and from work and helped him with heavy lifting. (Facts 59, 60.)

Beginning in early June 2011, Mr. Munson could not walk or stand. (Fact 14.) Mr. Munson admits that Shriners could have done nothing to allow him to stand, walk, or perform his job duties since June 2011. (Fact 18.) Shriners forced Mr. Munson to take leave from his job in early June 2011 because he could not perform his existing job duties. (Fact 22.) Mr. Munson could have performed work that allowed him to remain seated, but Shriners did not offer him any such work. (*Id.*) Shriners tried to contact Mr. Munson in July 2011 to determine his work status. (Fact 24.) Mr. Munson received a letter from Shriners dated July 26, 2011, that noted Shriners' unsuccessful attempts to reach him and asked him to call Russ Crockett, Shriners' Human Resources Director. (Fact 25.) The letter noted that if Mr. Munson did not respond, Shriners might remove him from payroll. (Fact 25.) Shriners treated Mr. Munson's leave throughout spring and summer 2011 as Family and Medical Leave Act ("FMLA") leave. (Facts 68, 69.) Mr. Munson exhausted his FMLA leave in early September 2011. (Fact 70.)

On September 13, 2011, Mr. Munson's doctor wrote an order allowing him to do light-duty work, meaning no lifting over thirty pounds, no climbing, limited walking (two blocks), and limited standing (ten minutes at a time). (Fact 26.) Although Mr. Munson disagreed with this order he never obtained a modified order. (Fact 27.) At some point that month Shriners told Mr.

Munson it had light-duty work available for him.  (Fact 28.)  Shriners attempted to reach Mr. Munson by phone to ask him to return to work to perform duties consistent with his doctor's orders, but Mr. Munson admits he did not always answer the phone.  (Facts 28, 29.)  Shriners sent Mr. Munson a letter dated September 21, 2011, asking him to report to work on September 26 to perform limited job duties and complete FMLA paperwork.  (Facts 29, 30.)  After Shriners received the letter back unopened, Shriners delivered the letter to Mr. Munson by hand on September 28.  (Fact 31.)

On September 28, Mr. Munson told Mr. Crockett he could not return to work because of high blood pressure.  (Fact 32.)  Mr. Crockett asked Mr. Munson to provide a doctor's note to that effect.  (*Id.*)  The next day, on September 29, Shriners received a letter from Mr. Munson's doctor that stated the doctor had treated Mr. Munson for high blood pressure that day.  (Fact 34.)  The doctor's office confirmed, however, that the note did not preclude Mr. Munson from working; it merely confirmed his treatment.  (*Id.*)

As a result, Shriners delivered a letter to Mr. Munson on September 30 that asked him to either report to work or provide a doctor's letter precluding him from doing so.  (Fact 35.)  Mr. Crockett and the head of Mr. Munson's department, Wesley Brady, also called Mr. Munson on September 30.  (*Id.*)  Mr. Munson hung up on them three times.  (*Id.*)  The letter Shriners delivered earlier that day instructed Mr. Munson to report to Shriners for work either that afternoon or Monday, October 3.  (Fact 38.)  The letter also informed Mr. Munson that if he did not either report to work or provide a doctor's note, Shriners would assume he had abandoned his job and thus terminate his employment.  (Fact 38.)  Mr. Munson did not report to work on October 3.  (Fact 43.)  Shriners therefore terminated his employment.  (Fact 43.)  Shriners then

sent Mr. Munson a letter setting forth the reasons for his termination: failure to report to work and insubordination.  (Fact 9.)

## ANALYSIS

### I. Damages

Mr. Munson's concessions about his inability to work after October 2011 eliminate his claim for back pay.  "Generally, a Title VII plaintiff can recover back pay only for the period the plaintiff is 'available and willing to accept substantially equivalent employment' elsewhere; courts exclude periods where a plaintiff is unavailable to work, such as periods of disability, from the back pay award." *Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 794 (11th Cir. 1999) (citation omitted).  This principle applies to ADA claims.  *See Morris v. Roche*, 182 F. Supp. 2d 1260, 1278 (M.D. Ga. 2002).[4]  However, a plaintiff may be "entitled to an award of back pay where the defendant's discriminatory conduct caused the disability." *Lathem*, 172 F.3d at 794 (citing *Sowers v. Kemira, Inc.*, 701 F. Supp. 809, 826 (S.D. Ga. 1988)).  Mr. Munson does not benefit from this exception because he asserts only, without any evidentiary support, that his continued work at Shriners "probably made his injury much worse."  (*See* Opp'n Mem. ii, 10, ECF No. 25.)  Thus, this assertion lacks adequate support under Federal Rule of Civil Procedure 56(c).

Ultimately, Mr. Munson concedes he could not work from "early October 2011" through at least the date he filed his Opposition Memorandum on October 28, 2013.  (*See* Opp'n Mem. 15, ECF No 25.)  Accordingly, the undersigned recommends the Court find Mr. Munson is not entitled to back-pay damages.

---

[4] The Rehabilitation Act and the ADA apply the same standards for discrimination and retaliation claims.  *See Jarvis v. Potter*, 500 F.3d 1113, 1121, 1125 (10th Cir. 2007).

## II. Mr. Munson does not meet the requirements for a "qualified individual" under the ADA

Mr. Munson's second and third causes of action for disparate treatment and denial of reasonable accommodation are disability discrimination claims under the ADA. "To establish a prima facie case of disability discrimination under the [ADA], a plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) she is qualified for her employment position; and (3) the defendant discriminated against her because of her disability." *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1128 (10th Cir. 2003) (citation omitted).

Shriners does not challenge that Mr. Munson meets the definition of "disabled" under the ADA, opting instead to argue he does not constitute a "qualified individual." (*See* Def.'s Br. 1–4, ECF No. 24.) The Tenth Circuit has "endorsed a two-part analysis to determine whether a person is qualified under the ADA." *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1190 (10th Cir. 2003) (citation omitted).

> First, the court determines whether the individual can perform the essential functions of the job. Second, if (but only if) the court concludes that the individual is unable to perform the essential functions of the job, the court determines whether any reasonable accommodation by the employer would enable him to perform those functions.

*Id.* (internal citations omitted); *see also* 42 U.S.C. § 12111(8) (defining "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires").

First, this Court must examine whether Mr. Munson can perform the essential functions of the job he held or desired at Shriners. The parties do not dispute extensive walking and standing formed essential functions of the job Mr. Munson held. (Facts 11–13, 17.) Nor do they dispute Mr. Munson could not perform the essential functions of his job as of June 2011. (Fact 14; Opp'n Mem. 2, ECF No. 25.) Accordingly, the Court must next determine whether Shriners

could have provided any reasonable accommodation to enable Mr. Munson to perform those functions. *See Davidson*, 337 F.3d at 1190. Mr. Munson concedes no reasonable accommodation by Shriners would have allowed him to perform his job's essential functions by June 2011. (Fact 18.)

Instead, the Court understands Mr. Munson to argue Shriners should have accommodated his disability by reassigning him to a job with essential functions Mr. Munson could perform (the desired job). (*See* Opp'n Mem. 3, ECF No. 25 ("The job Mr. Munson desired was a job where he could still work, doing something, and being productive, but be off his injured, broken foot. . . . That was the primary accommodation he was requesting.").) The Tenth Circuit recognizes reassignment as an accommodation. *See Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1161–64 (10th Cir. 1999). In *Smith*, the Tenth Circuit identified limitations on an employer's obligation to offer an employee a reassignment position. *Id.* at 1171–78. First, "[r]eassignment is limited to existing jobs within the company." *Id.* at 1174 (citing cases). Second, the employer must have a vacancy for the proposed reassignment position. *Id.* Mr. Munson identifies no existing, vacant job at Shriners to which Shriners could have reassigned him. Instead, Mr. Munson argues Shriners should have assigned him "to perform tasks which somebody needed to do" on a temporary basis until his foot healed. (Opp'n Mem. 5, ECF No. 25.) But Shriner's had no obligation to create a new position. *See Smith*, 180 F.3d at 1174. Reassignment therefore does not constitute a reasonable accommodation that would have allowed Mr. Munson to perform the essential functions of his job at Shriners.

Accordingly, Mr. Munson does not constitute a "qualified individual" under the ADA and fails to establish a prima facie case of disability discrimination by either disparate treatment or denial of reasonable acoommodation. The undersigned therefore recommends the Court grant

Shriner's summary judgment on Mr. Munson's disparate treatment (second) and denial of reasonable accommodation (third) causes of action.

### III. Disability Discrimination – Disparate Treatment

Shriners next argues that even if Mr. Munson constitutes a qualified individual under the ADA, he fails to establish the third prong of his prima facie case: that Shriners discriminated against him because of his disability. (Pl.'s Br. 4–10, ECF No. 24.) If the District Court declines to follow the undersigned's above recommendation, the Court should proceed to consider whether Mr. Munson has established the third prong of the prima facie case: that Mr. Munson "(3) suffered discrimination by an employer or prospective employer because of that disability.'" *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1038 (10th Cir. 2011). "In order to demonstrate 'discrimination,' a plaintiff generally must show that he has suffered an 'adverse employment action because of the disability.'" *Id.*

Mr. Munson alleges two adverse employment actions in this case: (1) Shriners' threats to terminate his employment if he took leave from work; and (2) Shriners' termination of his employment.[5] However, because Mr. Munson concedes he did not constitute a "qualified individual" when Shriners terminated his employment, the termination of Mr. Munson's employment cannot form the basis for his discrimination claim. The Court therefore need only consider this claim with respect to Shriners' March 2011 threats to terminate Mr. Munson's employment. (*See* Fact 21.) Shriners argues Mr. Munson fails to meet his burden to show pretext, without addressing the issue of whether the threats constitute adverse employment

---

[5] Although Mr. Munson states he bases this claim in part on Shriners' failure to accommodate his disability, failure to accommodate falls under a separate type of discrimination claim. *See Davidson*, 337 F.3d at 1188–89. The Court discusses Mr. Munson's claim for failure to accommodate below.

actions.  The Court therefore assumes for the purpose of recommending a decision on this Motion that the March 2011 threats constitute an adverse employment action.

Shriners argues Mr. Munson has not met his burden under the *McDonnell Douglas* burden-shifting framework, which applies after a discrimination plaintiff has established a prima facie case.  *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (citing *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802–04 (1973)).

> After establishment of a prima facie case, the burden shifts to the employer to offer a legitimate nondiscriminatory reason for its employment decision.  *Randle,* 69 F.3d at 451.  If the employer comes forward with a nondiscriminatory reason for its actions, the burden then reverts to the plaintiff to show that "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual-i.e., unworthy of belief."  *Id.*  Demonstrating pretext gets plaintiff "over the hurdle of summary judgment."  *Id.* at 452 (quoting *Ingels v. Thiokol Corp.,* 42 F.3d 616, 622 n.3 (10th Cir. 1994)).

> Pretext can be shown by " 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.' "  *Olson v. General Elec. Astrospace,* 101 F.3d 947, 951–52 (3d Cir. 1996) (quoting *Fuentes v. Perskie,* 32 F.3d 759, 765 (3d Cir.1994) (further citation omitted)).  "[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment."  *Branson v. Price River Coal Co.,* 853 F.2d 768, 772 (10th Cir. 1988).

*Id.*

Shriners argues it lawfully ordered Mr. Munson to return to work or face possible termination because his doctor's orders at that time permitted him to work.  (Facts 53, 56.) Moreover, Shriners has a policy prohibiting employees from using sick time to cover work missed after a workplace injury and would not let him use his sick leave for his foot injury since his doctor said he could work.  (Fact 72.)  Thus, if Mr. Munson continued to fail to come to work, Shriners would find that he had abandoned his job.  "The ADA does not prohibit

employers from disciplining [their] employees for violations of the company's policies."

*Rydalch v. Southwest Airlines*, No. 1:09-cv-00178-CW, 2011 WL 3349848, at *7 (D. Utah Aug. 3, 2011)* (citation omitted).  Because Shriners has demonstrated a nondiscriminatory reason for its actions—enforcement of company policy consistent with doctor's orders—the burden shifts to Mr. Munson to show Shriners' proffered reason represents only pretext.  *See Morgan*, 108 F.3d at 1323.  For example, Mr. Munson could have supported his pretext argument by showing that similarly situated employees who were not disabled received different treatment.  *See id.* at 1324 ("A satisfactory showing that similarly situated employees, who do not belong to the protected class, were treated differently with regard to violation of a work rule could have lent support to the pretext argument.").  Mr. Munson, however, fails to respond with any demonstration of pretext.  (*See* Fact 50 (admitting that he could not identify anyone like him who Shriners treated differently).)  Accordingly, the Court recommends entry of summary judgment on Mr. Munson's disability discrimination (second) cause of action in favor of Shriners.

## IV. Disability Discrimination – Failure to Accommodate

Similarly, if the Court declines to follow the undersigned's recommendation to award Shriners summary judgment on the failure to accommodate claim based on the "qualified individual" element, the Court should proceed to consider whether Mr. Munson has set forth sufficient evidence of a failure to accommodate to reach a jury.  "In order to establish a prima facie case of failure to accommodate under the ADA, a plaintiff must prove '(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . .; and (4) that the [employer] refused to make such

accommodations.'" *Spielman v. Blue Cross & Blue Shield of Kan., Inc.*, 33 Fed. App'x 439, 443 (10th Cir. 2002).

Mr. Munson admits that from June 2011 onward he could not perform the essential functions of his job, with or without reasonable accommodations. (Facts 11–14; Opp'n Mem. 2, ECF No. 25.) The time at issue is therefore March 2011, when Mr. Munson suffered his injury, until June 2011, when he admits he could not have performed the essential functions of his job even with reasonable accommodations.

Mr. Munson does not dispute that prolonged standing and walking constitute essential functions of his position with Shriners. Mr. Munson instead sought to accommodate his disability by requesting tasks he could perform while sitting. (Opp'n Mem. 3, 13, ECF No. 25.) However, a job composed of only seated tasks does not perform the essential functions of Mr. Munson's job with Shriners. Therefore assignment to seated tasks only does not present a reasonable accommodation. The Tenth Circuit has "consistently held . . . that an employee's request to be relieved from an essential function of her position is not, as a matter of law, a reasonable or even plausible accommodation." *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1122 (10th Cir. 2004).

Mr. Munson further argues Shriners failed to accommodate his disability because Shriners refused to give him time off work, refused to allow him to use sick time and vacation time, did not temporarily assign him reduced hours and reduced workload, and did not provide temporary help from co-workers. (*See* Fact 52.) Shriners argues it provided Mr. Munson with reasonable accommodations.

Mr. Munson does not dispute that he took eighteen PTO[6] days from March to early June 2011. (Fact 71.) Shriners had a policy prohibiting use of sick leave. (Fact 72.) As discussed above, the ADA does not require companies to abandon their policies. *Rydalch*, 2011 WL 3349848, at *7. Mr. Munson does not dispute multiple co-workers attempted to help him; his supervisor, Vernon Spears, personally transported Mr. Munson to and from Shriners from March 2011 to May 2011. (Fact 59.) Mr. Spears also helped Mr. Munson with heavy lifting during this time. (Fact 60.) Mr. Munson does not assert any facts to show what other workers could have done to assist him. Without evidence to support his assertions of failure to accommodate in the March to June period, Mr. Munson's claim cannot survive summary judgment.

The undisputed facts show Mr. Munson could not perform the essential functions of his job, with or without reasonable accommodations, during the period at issue. Moreover, undisputed facts show Shriners did in fact reasonably accommodate Mr. Munson's disability. Finally, Mr. Munson concedes Shriners followed his doctor's orders by permitting him to work with a boot and take pain medication. (Opp'n Mem. 13, ECF No. 25.) Shriners may rely on medical professional opinions without violating the ADA. *See Rodriguez v. Atria Sr. Living Grp., Inc.*, 887 F. Supp. 2d 503, 511–12 (S.D.N.Y. 2012) (noting employers may rely on medical opinions in determining reasonable accommodations). The Court therefore recommends the District Court grant Shriners summary judgment on Mr. Munson's third cause of action for failure to accommodate.

## V. Retaliation

The ADA states "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such

---

[6] Although Shriners does not define "PTO Time," the Court assumes Shriners intends the common meaning: Paid Time Off or Personal Time Off.

individual made a charge, testified, assisted, or participated in any manner in an investigation,

proceeding, or hearing under this chapter." 42 U.S.C. § 12203. Further, "to coerce, intimidate,

threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or

her having exercised or enjoyed . . . any right granted or protected by this chapter" is unlawful.

*Id.* The Tenth Circuit has stated

> [a] prima facie case of retaliation under the ADA requires: "(1) that [an employee] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Hennagir* [*v. Utah Dept. of Corrs.*], 587 F.3d [1255,] 1265; 42 U.S.C. § 12203. If a plaintiff establishes these factors, the employer has the burden of showing it had a legitimate, nondiscriminatory reason for the adverse action. *Hennagir,* 587 F.3d at 1265. If the employer can do so, the burden shifts back to the plaintiff to prove pretext, *id.,* which requires a showing that the proffered non-discriminatory reason is "unworthy of belief," *Johnson v. Weld Cnty., Colo.,* 594 F.3d 1202, 1211 (10th Cir. 2010).

*E.E.O.C. v. Picture People, Inc.*, 684 F.3d 981, 988 (10th Cir. 2012).

Mr. Munson argues he engaged in protected opposition to discrimination by requesting

reasonable accommodations. (*See* Amend. Compl. 22, ECF No. 19.) Mr. Munson's Amended

Complaint alleges Shriners retaliated against him by terminating his employment. (*Id.* at 22.) In

his Opposition Memorandum Mr. Munson concedes he cannot rebut the basis for termination.

(Opp'n Mem. 12, ECF No. 25.) Mr. Munson instead argues Shriners retaliated against him by

refusing to accommodate his disability in the time between March and June. (Opp'n Mem. 11–

13, ECF No. 25.) However, Mr. Munson cannot make out a prima facie case of retaliation under

those allegations either because he does not show Shriners' reason for denying accommodation

was pretext.

Mr. Munson argues Shriners retaliated against him by refusing to grant his requested

accommodations—leave and "sit-down work." (Opp'n Mem. 12–13, ECF No. 25.) However,

during March, April, and May 2011, Mr. Munson's doctor's notes permitted him to perform his

regular job duties with a boot or splint.  (Fact 56.)  Mr. Munson concedes Shriners complied with the doctor's orders and permitted him to work during that period with a boot or splint.[7]  (Opp'n Mem 13, ECF No. 25; Fact 58.)  Mr. Munson provides no evidence of pretext, and thus his retaliation claim during this period fails.  *See Picture People*, 684 F.3d at 988 (holding that if an employer provides a "legitimate, nondiscriminatory reason for the adverse action . . . the burden shifts back to the plaintiff to prove pretext").

Mr. Munson also fails to show Shriners retaliated against him by refusing to accommodate him in June 2011.  In early June 2011 Mr. Munson's doctor changed his orders to restrict Mr. Munson to sit-down work only.  (Fact 62.)  Shriners did not immediately comply with this restriction.  (Fact 63.)  Shriners explains, however, that "it initially mistakenly misread his doctor's orders," (Fact 64; Crockett Decl. ¶ 11), and "corrected this mistake within a few days," (Crocket Decl. ¶ 11).  Mr. Munson concedes he has no evidence to show this explanation is pretext, that is, anything other than a mistake.  (Fact 65.)  Absent a showing of pretext, an employer's mistake does not violate the ADA.  *See Whitfield v. Potter*, No. 07–cv–00650–MSK–MJW, 2008 WL 4527711, at *7 (D. Colo. Oct. 3, 2008) (noting that a mistake alone does not suffice to show pretext); *Lentz v. City of Cleveland*, 410 F. Supp. 2d 673, 691 (N.D. Ohio 2006) (granting summary judgment on retaliation claim in part because plaintiff failed to show employer's legitimate, non-discriminatory reason for action (mistake) was pretextual).  Because

---

[7] Although Mr. Munson disagreed with his doctor's orders, an employer may rely on doctor's opinions over an employee's unsupported request for a different accommodation without violating the ADA.  *See Rodriguez*, 887 F. Supp. 2d at 507, 511–12 (S.D.N.Y. 2012) (finding employer did not violate the ADA where employer relied on doctor's unrestricted authorization for employee to return to work and refused employee's unsupported request for restriction to light-duty work).

Mr. Munson fails to meet his burden of showing pretext, the undersigned recommends entry of summary judgment on Mr. Munson's retaliation (fourth) cause of action in favor of Shriners.

## RECOMMENDATION

For the reasons set forth above, the undersigned Magistrate Judge RECOMMENDS the District Judge GRANT Shriners' Motion for Summary Judgment as to all of Mr. Munson's claims.

The Court will send copies of this Report and Recommendation to all parties, who are hereby notified of their right to object. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The parties must file any objection to this Report and Recommendation within fourteen (14) days of service thereof. *Id.* Failure to object may constitute waiver of objections upon subsequent review.

DATED this 14th day of February, 2014.

BY THE COURT:

Evelyn J. Furse
United States Magistrate Judge